FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2007 JUL 30  AM 11: 35

LORETTA G. WHYTE
        CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CHRISTOPHER HUDSON                        CIVIL ACTION

VERSUS                                     NO. 05-1638

N. BURL CAIN, WARDEN, LOUISIANA            SECTION "H"
STATE PENITENTIARY

### ORDER AND OPINION

Christopher Hudson's *pro se* motion for post-conviction relief pursuant to 28 U.S.C. §2254 was considered on memoranda. Upon review of the entire state court record, it is clear that the record is sufficient for the purpose of adjudicating petitioner's claims, that a federal evidentiary hearing is not necessary, and that the petition should be dismissed for the following reasons.

Hudson is a state prisoner who was convicted following a jury trial of one count of second degree murder (La. Rev. Stat. 14: 30.1). The state district judge sentenced petitioner to a term of life imprisonment without benefit of probation, parole, or suspension of sentence. Petitioner appealed the conviction and sentence. The state court of appeals affirmed. *State v. Hudson*, No. 2001-KA-0268 (La. App. 1st Cir. January 29, 2001). The Louisiana Supreme Court denied petitioner's

1

application for a writ of *certiorari*. *State v. Hudson*, No. 2002-KO-0071 (La. January 24, 2003).

Thereafter, Hudson filed a petition for *habeas corpus* relief in the state district court. The state district judge denied petitioner relief. *State v. Hudson*, No. 297097 (22nd Judicial District Court Parish of St. Tammany May 7, 2003). Both the state court of appeals and the Louisiana Supreme Court denied petitioner's application for writs. *State ex rel Hudson v. State*, No. 2003-KW-1166 (La. App. 1st Cir. August 25, 2003); *State ex rel Hudson v. State*, No. 2004-KH-0779 (La. February 18, 2005).

Petitioner contends that his conviction and sentence should be vacated for the following reasons:

- there was insufficient evidence to sustain the conviction;
- trial counsel provided ineffective assistance;
- he was denied his Sixth Amendment right of confrontation;
- the process used to select the foreperson of the grand jury that indicted petitioner violated his Sixth Amendment right to a grand jury representing a fair cross-section of the community; and
- the sentence is unconstitutionally excessive.

The state concedes that petitioner has exhausted his available state court remedies with respect to each of these claims, except his claim concerning the grand jury. Review of petitioner's state court pleadings demonstrates that in his application to the Louisiana Supreme Court for a supervisory writ following the denial of his petition for state *habeas corpus* relief, petitioner stated that the "[s]upervisory writ should be granted because the ruling in <u>Campbell</u>, supra, and the ruling by the Fifth Circuit in Peterson, supra, the Sixth Amendment fair cross section claim is intertwined or interrelated, 'both courts declined to rule on the issue because the issue was not presented to the

state.'" Construing Hudson's *pro se* petition liberally, as I am required to do,[1] I conclude that petitioner did raise before the Louisiana Supreme Court his claim that the process used to select the foreperson of the grand jury that indicted him violated his Sixth Amendment right to be indicted by a grand jury representing a fair cross section of the community. Therefore, plaintiff has exhausted his available state court remedies as to that claim.

## STANDARD OF REVIEW

28 U.S.C. § 2254(d) mandates that claims adjudicated on the merits in state court proceedings are subject to the following standards of review:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Drinkard v. Johnson*[2] the Fifth Circuit Court of Appeals analyzed the standards of review set out in §2254(d) and held that when reviewing questions of fact which were previously adjudicated on the merits by a state court, a federal court may grant habeas relief only "if the state

---

[1] *See Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

[2] 97 F.3d 751, 767-68 (5th Cir. 1996), *cert. denied*, 520 U.S.1107, 117 S.Ct. 1114, 137 L.Ed.2d 315 (1997), *overruled in part on other grounds, Lindh v. Murphy*, 521U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).

court adjudication of the claim 'resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence.'" *Id.* (citing 28 U.S.C. § 2254(d)(2)). As for questions of law, "a federal court may grant *habeas* relief only if it determines that a state court's decision rested on a legal determination that was contrary to . . . clearly established Federal law, as determined by the Supreme Court." *Id.* at 768. Where a mixed question of law and fact is being reviewed, "a federal court may grant *habeas* relief only if it determines that the state court decision rested on 'an unreasonable application of [] clearly established Federal law, as determined by the Supreme Court of the United States,' to the facts of the case." *Id.* at 768 *(quoting* 28 U.S.C. § 2254(d)(1)). "[A] decision is contrary to clearly established Federal law 'if the state court arrives at a conclusion opposite to that reached [by the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts.'" *Knox v. Johnson,* 224 F.3d 470, 476 (5th Cir. 2000) *(quoting Williams v. Taylor,* 529 U.S. 362, 413, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000)). A writ may be granted based upon a state court's unreasonable application of federal law only "if the state court identifies the correct governing principle . . . but unreasonably applies the principle to the facts of the prisoner's case. " *Id.* "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Williams v. Taylor,* 529 U.S. at 409, 120 S.Ct. at 1521.

FACTUAL BACKGROUND

The state court of appeals summarized the facts as follows:

> On November 15, 1998 at approximately 11:30 p.m., Officer Rodney West of the Slidell Police Department received information about a shooting at a home located at 2237 First Street in Slidell, Louisiana.

4

The officer arrived on the scene around 11:43 p.m. and discovered a victim lying parallel to the sidewalk of the home. He immediately contacted paramedics. The residence was a one-story wooden shotgun-style duplex with a large front porch. The right side of the duplex was occupied by Troy Taylor and, sporadically, his brother Chris Tastet. The left side of the duplex was occupied by Taylor's grandparents and the victim Demetrius Bodden, a close friend of Chris Tastet. Bodden's head was facing north, his feet were facing south, and his right side was facing towards the front of the residence. The officer described Bodden as unresponsive, having his eyes closed, bleeding from his nose, and breathing abnormally. The paramedics arrived within a few minutes and began caring for the victim, who later died. Other officers arrived on the scene and began collecting evidence, preserving the crime scene, and interviewing witnesses. The officers obtained consent to search the home. Troy Taylor and his girlfriend Lynn Mizell gave the officers a description of the vehicle driven by the assailant. Taylor was taken to the police station to identify a prospective suspect.

Troy Taylor informed police that the assailant came to the front door of the home and asked for "Little Chris," Taylor's youngest brother Chris Tastet. When Taylor told the person, described as a six foot to six foot one inch tall black male with a stocky build, that his brother was not home, he asked for the victim Demetrius Bodden. Taylor asked the person to wait and he called Bodden to the door. Bodden went to the front porch, closed the door behind him and began conversing with the person at the door. A few moments later, Taylor heard three gunshots and Bodden came back inside the home and yelled, "Run!" Bodden then told Taylor to get him to the hospital because he was shot.

Upon interviewing several witnesses, the officers learned that the defendant, Christopher Hudson, traveled from his home in Baton Rouge to Slidell earlier that evening along with Charles Ben and Diedra Carter who also lived in Baton Rouge. The vehicle they traveled in belonged to Charles Ben. Once they arrived in Slidell, the defendant met with Secundina Gordon. According to Chris Tastet, he owed money to Secundina Gordon and her husband Ben Hale Gordon for a drug deal. Tastet informed the officers and later testified that the Gordons had given him three thousand dollars to purchase drugs in Texas. Tastet, however, was robbed while in Texas and was unable to produce the money or the drugs when he returned to Slidell. Tastet's old roommate informed him that Ben Hale

Gordon had made a threat against his life for the failure to pay him and his wife the money Tastet owed them.

Two witnesses, Charles Ben and Diedra Carter, testified that Secundina Gordon hired the defendant to harm Tastet due to his failure to pay the Gordons the debt he owed. According to Ben and Carter, for several hours, they, along with the defendant and Secundina, rode around making several stops and smoking marijuana and drinking alcohol. The group rode past the Taylor home a few times during the evening. Later that night, the group returned to the Taylor residence. Ben and Carter testified that the defendant walked up to the porch of the residence where Chris Tastet used to live, and moments later they heard gunshots. They also testified that Secundina Gordon had given the defendant an object that they perceived to be a gun before they arrived at the residence. Taylor, in a photographic line-up, identified the defendant as the male that came to the door asking for his brother and the victim. Charles Ben's vehicle matched the description of the vehicle spotted at the crime scene.

In connection with the incident, the defendant, Charles Ben, Diedra Carter, Ben Hale Gordon, and Secundina Gordon were charged and arrested. The police conducted a search of the Gordons' residence and vehicle and found a receipt for a firearm and ammunition and another receipt for a shooting course for Secundina. The firearm and ammunition type on the receipt matched the bullet casings collected a the scene of the shooting. The police also conducted a search of Charles Ben's vehicle and recovered a black stocking-type cap that the perpetrator was described as wearing on the night of the shooting. Charles Ben and Diedra Carter were charged as principals to second degree murder, and Ben Hale Gordon was charged as an accessory after the fact to second degree murder. The defendant and Secundina Gordon were indicted for the second degree murder of Demetrius Bodden.

*State v. Hudson*, No. 2001 KA 0268 (La. App. 1st Cir. November 9, 2001).

## INSUFFICIENT EVIDENCE

Petitioner contends that there is insufficient evidence to support his conviction. In determining whether a conviction is supported by sufficient evidence, the relevant inquiry is whether,

in viewing the evidence in the light most favorable to the prosecution, a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318, 319, 99 S.Ct. 2781, 2788-89 (1990). The issue of sufficiency of the evidence presents a mixed question of law and fact. Therefore, *habeas corpus* relief can be granted only if the state court's rejection of that claim was based on an unreasonable application of clearly established federal law to the facts. The state court did not unreasonably apply clearly established federal law to the facts presented herein in concluding that there was sufficient evidence for a reasonable trier of fact to conclude beyond a reasonable doubt that petitioner had committed second degree murder.

Second degree murder is defined in pertinent part as "the killing of a human being . . . [w]hen the offender has a specific intent to kill or inflict great bodily harm." La. Rev. Stat. 14:30.1. "Specific intent" is "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La. Rev. Stat. 14:10(1). Specific intent can be formed in an instant, and "may be inferred from the circumstances of the transaction and the actions of the defendant." *State v. Cousan*, 684 So.2d 382, 390 (La. 1996) (internal quotation and citation omitted). Specific intent may be inferred from a defendant's act of pointing a gun and firing at a person. *State v. Seals*, 684 So.2d 368, 373 (La. 1996). "[S]pecific intent may be established by circumstantial evidence alone if every reasonable hypothesis of innocence is excluded." *State v. Cousan*, 684 at 390

Troy Taylor identified Chris Hudson as the individual who came to the door and asked for "Little Chris" and then asked for the victim once Taylor stated that "Little Chris" was not at the house. After Taylor told Demetrius Bodden that there was someone at the door to see him, Taylor returned to the living room and resumed playing video games; within a few minutes he heard

gunshots which sounded like they were coming "right off" of the front porch. Charles Ben, who was in a car parked in front of the victim's house, also identified petitioner as the individual who was on the porch at the victim's residence. Ben testified that he saw Hudson go to the porch of the house where he talked to a "short guy," and that he then heard gunshots coming from the porch. Ben further testified that after he heard the gunshots, Hudson returned to the car where Ben was sitting. Ben also testified that when Hudson got out of the car after returning to Baton Rouge that he had a gun in his hand.

Deidra Carter's testimony provided additional evidence that the jury could have relied upon in concluding that Hudson was guilty beyond a reasonable doubt. Carter, who had accompanied Ben and Hudson from Baton Rouge to Slidell, testified that at one point after arriving in Slidell, she separated from Ben and Hudson and rode with Secundina Gordan to Gordan's home, that Gordan entered the home, and that she returned to the car carrying an object. Carter stated that once Secundina got in the car, it became apparent that the object was a gun, and that later in the evening and prior to the shooting, Secundina transferred the gun to Hudson. Carter also testified that Hudson drove to 2237 First Street and parked in front of the house. Thereafter she saw Hudson get out of the car and approach the house. Carter then heard three shots after which she saw Hudson get back in the car parked in front of the victim's residence and drive down the street to where she and Secundina Gordan were waiting in another car. Carter further testified that after the shooting she saw Hudson with the gun, and that in her presence he stated "I went pow, pow, pow."

Hudson presented a mistaken identity defense based upon the testimony of Joshua Saavedra and Michael Martindale, both of whom were inmates at the St. Tammany Parish jail at the time of the trial. Saavedra and Martindale, who were not together on the night of the shooting, each testified

8

that he witnessed the shooting, and each identified Charles Ben as the man who shot Demetrius Bodden. On rebuttal, the state elicited testimony from Gregory Langeno, the custodian of records for the St. Tammany Parish jail that, on the night of the shooting, Michael Martindale was incarcerated at the jail. Obviously, the jury, as it was entitled to, did not credit the identification testimony of the defense witnesses. Viewed in the light most favorable to the prosecution, there was very strong evidence from which the jury could have found defendant guilty beyond a reasonable doubt. The insufficient evidence claim is denied.

## EXCESSIVE SENTENCE

Louisiana law mandates that "[w]hoever commits the crime of second degree murder shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence." La. Rev. Stat. 14:30.1(b). It is undisputed that plaintiff's sentence of life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence is statutorily authorized. Nevertheless, petitioner contends that his sentence is constitutionally excessive.

While "[t]he Eighth Amendment contains no proportionality guarantee,[3] it does prohibit sentences that are grossly disproportionate to the crime. *United States* v. *Gonzalez*, 121 F.3d 928, 942 (5th Cir. 1997), *citing Solem v. Helm*, 463 U.S. 277, 288, 103 S.Ct. 3001, 3008-09, 77 L.Ed.2d 637 (1992). The first step in determining whether a sentence is disproportionate is to compare the gravity of the offense to the harshness of the penalty. *McGruder v. Puckett*, 954 F.3d 313, 316 (5th Cir. 1992). Further analysis of the sentence is necessary only when a comparison of the gravity of

---

[3] *Harmelin v. Michigan*, 501 U.S. 957, 965, 111 S.Ct. 2680, 2686, 115 L.Ed.2d 836 (1991).

the crime to the sentence leads to an inference that the sentence is grossly proportionate. Once a threshold showing of gross disproportionality is made, the sentence must be compared to sentences for similar crimes in the same jurisdiction and to the sentences for the same crime in other jurisdictions to determine whether the sentence violates the Eighth Amendment. *Smallwood v. Johnson*, 73 F.3d 1343, 1347 (5th Cir. 1996).

*Rummel v. Estelle*, 445 U.S. 263, 285, 100 S.Ct. 1133, 1135, 63 L.Ed.2d 382 (1980), established the benchmark for determining whether a sentence is grossly disproportionate. *United States v. Gonzalez*, 121 F.3d at 943. In *Rummel*, the Supreme Court concluded that a life sentence imposed on a non-violent criminal pursuant to a recidivist statute was not unconstitutionally disproportionate. *Rummel v. Estelle*, 445 U.S. at 285, 100 S.Ct. at 1135. The offenses involved in *Rummel*, i.e., obtaining $120.00 by false pretenses, passing a no-account check, and passing a forged check, are all non-violent offenses and far less serious than the second degree murder offense committed by petitioner. Second degree murder is a crime of violence per se. Considering the severity of the sentence upheld in *Rummel*, petitioner's sentence of life imprisonment for taking the life of another is not grossly disproportionate.

## CONFRONTATION CLAUSE

The Confrontation Clause of the Sixth Amendment guarantees a criminal defendant the right to cross examine the witnesses against him. *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986). At the time of petitioner's trial Secundina Gordan had been indicted for the second degree murder of Demetrius Bodden but had not yet been tried. During petitioner's trial, her counsel invoked, on Mrs. Gordan's behalf, her Fifth Amendment right not to incriminate herself. Thus, Secundina Gordan did not testify at petitioner's trial, and was therefore

10

unavailable to be cross-examined concerning statement allegedly made by her to others and repeated before the jury.

Petitioner urges that he was deprived of his Sixth Amendment right to confrontation because statements made by Secundina Gordan, who was not present at his trial to be cross-examined, were testified to by Charles Ben and Deidra Carter, and that the prosecutor repeated statements made by Secundina Gordan during his opening statement to the jury. Specifically, petitioner asserts that his conviction should be vacated because:

- in his opening statement the prosecutor told the jury that after the shooting Hudson told "Secundina and Diedra basically, I have taken care of that";
- in his opening statement the prosecutor told the jury that after the shooting Secundina Gordan told Deidra Carter to "get out of the car and go with them, I will show you how to get out of this area, and drives them through Slidell, getting away from that location as fast as possible;
- Charles Ben testified that Secundina Gordan told Chris Hudson that "[s]he wanted him to beat someone up"; and
- Deidra Carter testified that after the shooting Secundina Gordan asked petitioner "Did you do it?" and Hudson nodded "yes".

Violations of the Confrontation Clause are subject to the harmless error analysis. *Hafdahl v. Johnson*, 251 F.3d 528, 539 (5th Cir. 2001). Under the harmless error standard, federal *habeas corpus* relief may not be granted for constitutional error that did not "have a substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). Because I conclude that if there were any violations of the Confrontation Clause, they constitute only harmless error, it is not necessary to analyze whether the challenged statements actually violated petitioner's Sixth Amendment right to confront witnesses against him.

The prosecutor's statements challenged by petitioner were made during the state's opening statement. Any negative effect flowing from those statements was minimized by the judge's instruction at the conclusion of the trial that "[t]he opening statements and the closing statements are not evidence." Moreover, the prosecutor's repetition of Mrs. Gordan's statement to Deidra Carter to "get out of the car and go with them, I will show you how to get out of this area" did not implicate petitioner in the murder, nor is it inconsistent with petitioner's defense that Charles Ben, not petitioner shot Demetrius Bodden.

The remaining two statements challenged by petitioner also constitute harmless error. The state presented a very strong case against Hudson. Uncontradicted testimony established that Secundina Gordan gave Hudson a gun on the night of the shooting before the shooting occurred and that the bullet casings found at the scene of the shooting were the same type as those identified on a receipt found during a search of Secundina Gordan's home. Charles Ben and Troy Taylor testified that Hudson was on the porch at the victim's home talking to someone shortly before they heard gunshots coming from the porch area. Deidra Carter also testified that Hudson approached the porch of the victim's home shortly before she heard gunshots. Additionally, Charles Ben and Deidra Carter testified that after the shooting they saw Hudson with a gun. Considering the strength of the state's case, it is not reasonable to conclude that either Charles Ben's testimony that Secundina Gordan told Hudson that "[s]he wanted him to beat someone up" or that Deidra Carter's testimony that following the shooting Secundina Gordan asked Hudson "[d]id you do it?" had a substantial or injurious effect on the jury in determining petitioner's guilt. Absent the challenged testimony, there was more than sufficient evidence for the jury to conclude beyond a reasonable doubt that petitioner murdered Demetrius Bodden.

## GRAND JURY SELECTION

Hudson, a black male, contends that his conviction must be vacated because the process used to select the foreperson of the grand jury that indicted him, deprived him of his constitutional right to be indicted by a grand jury representing a fair cross-section of the community. The state urges that petitioner is procedurally barred from raising this claim because contrary to Louisiana law, Hudson did not file a pretrial motion to quash the indictment on this ground.

Generally a federal court will not review a question of federal law decided by a state court if the decision of the state court rests on a state ground that is both independent of the federal claim and adequate to support that judgment. *Amos v. Scott*, 61 F.3d 333, 338 (5th Cir. 1995), *citing Harris v. Reed*, 489 U.S. 255, 260, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989). "This 'independent and adequate state law' doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or habeas review." *Id.* (citations omitted).

Procedural default does not bar federal review of a federal claim in a *habeas* petition unless the last state court rendering a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar. *Harris v. Read*, 489 U.S. at 263, 109 S.Ct. at 1043. "Where the last reasoned opinion on the claim explicitly imposes a procedural bar, we will presume that a later decision rejecting the claim did not silently disregard that bar." *Ylst v. Nunnemaker*, 501 U.S. 801, 111 S.Ct. 2590, 2594, 115 L.Ed.2d 706 (1991).

Although each state court that reviewed this claim rejected it, no state court articulated that it rejected the claim as procedurally barred due to Hudson's failure to move to quash the indictment Because no state court specifically rejected this claim on that basis, the claim is not procedurally barred. Therefore, the merits of the claim must be addressed.

While the Supreme Court has never applied the Sixth Amendment's fair cross-section requirement to the selection of state grand jury members, the Fifth Circuit has recognized such a requirement. *See Murphy v. Johnson*, 205 F.3d 809, 818 (5th Cir. 2000). To establish a *prima facie* case for a claim that the selection process for the grand jury foreman violates the constitutional guarantee for a fair cross-section of the community the petitioner must demonstrate:

> (1) that the group alleged to be excluded is a distinctive group in the community;
> (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and
> (3) that this underrepresentation is due to systemic exclusion of this group in the jury-selection process.

*United States v. Olaniyi-Oke*, 199 F.3d 767, 773 (5th Cir. 1999).

Petitioner provides no evidence concerning how the foreperson of his grand jury was selected, nor does he provide any evidence establishing that the number of black forepersons appointed in St. Tammany Parish was not fair and reasonable in relation to the number of blacks in the community and the number of forepersons appointed. Petitioner offers only conclusory allegations in support of his claim. "[M]ere conclusory allegations of discrimination are insufficient to entitle an individual to relief." *Ellis v. Lynaugh*, 873 F.2d 830, 839 (5th Cir. 1989).

## INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner urges that trial counsel provided ineffective assistance by failing to move to quash the indictment against Hudson and by failing to question or subpoena Charles Taylor and Lori Jackson. These claims lack merit.

In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court established a two prong test for evaluating claims of ineffective assistance of counsel:

14

a defendant seeking relief must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense. With regard to the performance prong, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688, 104 S.Ct. at 2064. There is a strong presumption that an attorney's performance "falls within the wide range of reasonable professional assistance." *Id.* at 689, 104 S.Ct. at 2065. The defendant must overcome the presumption that the challenged action might be considered to be sound trial strategy. *Id.* (internal quotation and citation omitted).

In order to satisfy the prejudice requirement, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v. Washington*, 466 U.S. at 694, 104 S.Ct. at 2068. It is clear that even "professionally unreasonable" errors on the part of counsel do not warrant setting aside a conviction if the error had no effect on the proceeding. *Larsen v. Maggio*, 736 F.2d 215 (5th Cir. 1984).

The burden of demonstrating prejudice rests on the defendant. *Strickland v. Washington*, 466 U.S. at 693, 104 S.Ct. at 2067. The defendant must demonstrate that an alleged error actually had an adverse effect on the defense"; that the 'might have beens' [at trial] would have been important enough to affect the proceedings' reliability." *Larsen v. Maggio*, 736 F.2d at 218. If the defendant makes an insufficient showing on either component of the ineffective assistance of counsel inquiry, it is not necessary to examine the remaining prong of the test. *Strickland v. Washington*, 466 U.S. at 697, 104 S.Ct. 2069.

Even if trial counsel had moved to quash the indictment on the ground that the grand jury returning the indictment did not represent a fair cross-section of the community, and had persuaded

the state trial judge to dismiss the indictment on that basis, there is no doubt that the state would have sought and obtained a second indictment on the same charge. Two witnesses identified Hudson as the man who was on the porch of the victim's home and spoke to someone on the porch shortly before they heard gunshots that sounded as like they originated in the porch area. A third witness saw Hudson approach the porch shortly before she heard gunshots. Additionally, two witnesses who saw Hudson on the porch prior to hearing gunshots stated that in the hours after the shooting they saw Hudson with a gun. Petitioner has failed to establish prejudice resulting from his counsel's failure to move to quash the indictment.

Nor has petitioner established that he sustained prejudice due to counsel's failure to question and subpoena Charles Taylor and Lori Jackson. Charles Taylor, Troy Taylor's grandfather, resided in the left side of the duplex located at 2773 First Street. He did not witness the shooting; however, he did give Officer Campbell a statement in which he stated that he saw a man get into a vehicle parked in front of the house after the shooting. The record does not contain Charles Taylor's description of that man, but at trial Officer Campbell characterized Mr. Taylor's description of the suspect as "dissimilar" to that given by the other witness Campbell interviewed, i.e., Troy Taylor, Deidra Carter, and Charles Ben. Petitioner contends that Charles Taylor saw a "large older model vehicle possibly a Chevy with a white hood" in front of the house before the shooting and that Charles Taylor described the man who got into the car following the gunshots as a white male "being about 6'1, with blond hair" Petitioner's Supplemental Brief in Support of Original Petition for Writ of Habeas Corpus, p. 7.

By virtue of the state's production of the statement given by Charles Taylor to Officer Campbell in response to defense counsel's discovery request, defense counsel had access to Mr.

16

Taylor's version of the events that night and his description of the man he saw getting into the car parked in front of the house. There is no reasonable probability that the result of the trial would have been different had defense counsel taken a statement from or subpoenaed Charles Taylor as a witness. As noted herein above, Hudson presented a defense of mistaken identity and attempted to establish that Charles Ben shot Demetrius Bodden. Charles Ben is black. Testimony by Charles Taylor that he saw a white male get into the car packed in front of the house following the shooting would have been inconsistent with Hudson's defense that Charles Ben shot the victim, and would have undermined Hudson's defense.

Additionally, petitioner asserts that is counsel rendered ineffective assistance by failing to get a statement from and subpoena Lori Jackson as a defense witness. This claim also fails because petitioner has failed to satisfy the prejudice prong of the *Strickland* test.

Petitioner represents that Ms. Jackson, who lived across the street from the crime scene, heard two shots and saw a "dull gray older model two-door vehicle possibly a Monte Carlo leaving the area in a hurry." None of that information indicates who shot the victim. Hudson does not assert that Ms. Jackson saw the shooting or the perpetrator. Moreover, nothing in petitioner's summary of Ms. Jackson's knowledge concerning the events of the night of the shooting exculpates petitioner. There is no reasonable probability that the outcome of petitioner's trial would have been different had Lori Jackson testified in accordance with petitioner's representation of her knowledge. Accordingly,

IT IS ORDERED, ADJUDGED, and DECREED that Christopher Hudson's petition for *habeas corpus* relief is hereby dismissed with prejudice.

New Orleans, Louisiana this 30th day of July, 2007

*Adrian L.H. Duplantier*
UNITED STATES DISTRICT JUDGE